E-FILED
Monday, 24 May, 2021  02:05:15 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | |
|---|---|
| JASON R. SHELDON, STEVEN HUNSBERGER, )<br>    )<br>        Plaintiffs, )<br>    )<br>    v. )<br>    )<br>STATE FARM MUTUAL AUTOMOBILE )<br>INSURANCE COMPANY, *et al*., )<br>    )<br>        Defendants. ) | No. 1:19-cv-01080-JES-TSH |

## DEFENDANTS' MEMO IN SUPPORT OF JUDGMENT ON THE PLEADINGS

Defendants (collectively, "State Farm"), submit the following memorandum in support of their motion for judgment on the pleadings regarding Plaintiffs' class ERISA claims.

## INTRODUCTION

Plaintiffs' complaint includes individual and class allegations.  (*See* Dkt. 1.)  As is relevant here, Plaintiffs allege class violations for a group of State Farm Term Independent Contractor Agents ("TICAs") under the Employee Retirement Income Security Act ("ERISA").   Plaintiffs claim they were "misclassified as independent contractors and not provided 401(k), retirement, and pension benefits."  (Dkt. 1 at 1; *see also* ¶¶ 1–4, 30–44, 110–29.)

Plaintiffs' ERISA claims should be dismissed for two reasons.  *First*, all but two of the benefit plans upon which Plaintiffs base their claims specifically exclude Plaintiffs from coverage.  Thus, consistent with decisions of the Seventh Circuit and other courts, the Court may resolve this matter on the pleadings, even if, assuming *arguendo*—solely for purposes of this motion—Plaintiffs could establish they were common-law employees.  *See* Fed. R. Civ. P. 12(c); *see also Brunt v. Serv. Employees Int'l Union*, 284 F.3d 715, 718–19 (7th Cir. 2002) (affirming dismissal where there were no material issues of fact to be resolved).

This is because for their ERISA claims Plaintiffs must show *both*: (a) that they were State Farm's common-law employees; *and* (2) that they met the eligibility requirements under the relevant ERISA plans. *Estate of Suskovich v. Anthem Health Plans of Va., Inc.*, 553 F.3d 559, 571 (7th Cir. 2009). Plaintiffs cannot make this second showing. Therefore, this Court need not reach the common-law employee issue to find that Plaintiffs' ERISA claims fail.

*Second*, even if there was a question regarding the exclusions in two of the relevant plans, there is no question Plaintiffs were parties to term-limited, non-renewable contracts. Accordingly, for those two plans, Plaintiffs lack standing to pursue their ERISA claims. And because Plaintiffs' ERISA class claims fail, their additional claims regarding ERISA's minimum coverage standards and for an alleged breach of fiduciary duty also fail as a matter of law.

Given the foregoing, State Farm's motion for judgment on the pleadings should be granted.

## **BACKGROUND**

### I.    **Plaintiffs' TICA Agreements Specified That Plaintiffs Were Independent Contractor Agents, and the Agreements Were Properly Terminated.**

In 2016 and 2017, Plaintiffs entered into State Farm Agent's Agreements (the "Agreements"), which "set forth the objectives, obligations, and responsibilities essential to the relationship between [each Plaintiff], *operating as an independent contractor*, and State Farm." (Dkt. 10-11 at 2; Dkt. 10-13 at 2 (emphasis added).)

Under the Agreements, Plaintiffs were "independent contractor[s] for all purposes," with "full control of [their own] daily activities" and "the right to exercise independent judgment" as to carrying out the provisions of the Agreements. (Dkt. 10-11 at 3, Dkt. 10-13 at 3.) Each Agreement also had a specified term. Sheldon's Agreement was effective January 1, 2017 and had a specific termination date of January 31, 2018. (Dkt. 10-11 at 2.) Hunsberger's Agreement

was effective January 1, 2016 and had a specific termination date of December 31, 2016.  (Dkt. 10-13 at 2.)  In addition, both Agreements could be terminated at any time "with or without reason."  (Dkt. 10-11 at 4; Dkt. 10-13 at 4.)  And, unless terminated sooner, the Agreements provided they would expire on the date specified and would not be extended beyond their original dates under any circumstance.  (Dkt. 10-11 at 4; Dkt. 10-13 at 4.)

As permitted by the Agreements, State Farm terminated Sheldon's Agreement effective 11:59 p.m. on September 30, 2017.  Hunsberger's Agreement expired by its terms on December 31, 2016.  (Dkt. 10-12; Dkt. 10-14.)  And by the express terms of the Agreements, State Farm was under "no obligation to offer any additional Agreement" once the Agreements terminated.  (Dkt. 10-11 at 4–5; Dkt. 10-13 at 4.)  Thus, there is no dispute that Plaintiffs' term-limited Agreements classified them as independent contractors, and those Agreements ended on December 31, 2016 (Hunsberger) and September 30, 2017 (Sheldon), respectively.

## II.  Plaintiffs Allege They Should Have Been Classified as Employees under ERISA.

Plaintiffs' complaint alleged State Farm misclassified them as "independent contractors" to exclude them from State Farm's "retirement plan," "401(k) plan," "group health care plan," "group dental plan," "group life plan," and "long-term disability plan."[1]  (Dkt. 1 ¶¶ 117, 124.)  During 2016 and 2017, when Plaintiffs were parties to the Agreements, the benefit plans State Farm sponsored for its employees included:

- State Farm Insurance Companies Retirement Plan for United States Employees (the "Retirement Plan") (*see, e.g.,* Dkt. 10-3; Dkt. 10-4; Dkt. 10-5);

- State Farm 401(k) Savings Plan (the "401(k) Plan") (*see, e.g.,* Dkt. 10-7; Dkt. 10-8; Dkt. 10-9; Dkt. 10-10);

---

[1]   Plaintiffs' allegations are inconsistent.  Initially, Plaintiffs allege only that they were not provided 401(k), retirement, and pension benefits.  (Dkt. 1 at 1, ¶ 33.)  Later complaint allegations discuss the other listed benefits. (Dkt. 1 ¶¶ 117, 124.)

- State Farm Insurance Companies Group Health and Welfare Plan for United States Employees (the "Medical Plan") (*see, e.g.,* Dkt. 10-15; Dkt. 10-16);

- State Farm Insurance Companies Group Dental Plan for United States Employees (the "Dental Plan") (Dkt. 10-20);

- State Farm Group Life and Accidental Death and Dismemberment Insurance Plan for United States Employees the (the "Life Insurance Plan") (Dkt. 10-25); and

- State Farm Insurance Companies Long Term Disability Plan for United States Employees (the "Long-Term Disability Plan") (Dkt. 10-26; Dkt. 10-27).

Plaintiffs further claim the putative class should have been classified as employees in order to comply with the "minimum coverage" provisions set forth in 26 U.S.C. §§ 410(b) and 105(h).[2] (Dkt. 1 ¶¶ 118, 125.)  Based on State Farm's exclusion of independent contractors from the State Farm plans on which they base their claim, Plaintiffs assert that State Farm violated 26 U.S.C. §§ 410(b) and 105(h) and breached its fiduciary duty to administer a plan in accordance with ERISA under 29 U.S.C. § 1104(a)(1)(D).[3]  (Dkt. 1 ¶¶ 119–20, 126–27).

As explained below, however, Plaintiffs' ERISA claims fail because all but two of the applicable benefit plans expressly exclude agents and independent contractors from coverage, even if such individuals could be considered common-law employees.  Thus, assuming *arguendo* that Plaintiffs could show they were common-law employees—a point State Farm in no way concedes—Plaintiffs' claims should be dismissed based on that exclusion language.  And as for State Farm's life insurance and disability benefit plans, Plaintiffs lack standing because neither

---

[2]     These provisions describe minimum coverage requirements for pension plans and the requirements for self-insured medical expense reimbursement plans that do not discriminate in favor of highly compensated individuals.  In general, they provide that to retain their tax-qualified status, such plans must cover a sufficient number of individuals who are not considered "highly compensated" under the applicable statutory and regulatory provisions.  *See, e.g., Bronk v. Mountain States Tel. & Telegraph, Inc.,* 140 F.3d 1335, 1339 (10th Cir. 1998).

[3]     "Subject to [§§] 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and…in accordance with the documents and instruments governing the plan."

of them died or became disabled during the terms of their Agreements.  In addition, because of the term-limited nature of those Agreements, Plaintiffs have no plausible claim to future benefits.

## ARGUMENT

### I.    Applicable Legal Standard

"After the pleadings are closed…a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  In deciding a motion for judgment on the pleadings, a court may consider "all pleadings, including the Complaint, Answer, and attached exhibits."  *Berry v. Ill. Dep''t of Transp.*, 333 F. Supp. 2d 751, 753 (C.D. Ill. 2004) (citations omitted).

Rule 12(c) motions are reviewed under the same standard as a motion to dismiss.  *See Wagner v. Teva Pharm. USA, Inc.*, 840 F.3d 355, 357–58 (7th Cir. 2016) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A court must "draw all reasonable inferences and facts in favor of the nonmovant, but need not accept as true any legal assertions."  *Wagner*, 840 F.3d at 358.  Plaintiffs must rely on their allegations. *Kibler v. United States*, 46 F. Supp. 3d 844, 855 (C.D. Ill. 2014) (citations omitted).  A Rule 12(c) motion should be granted where "it appears beyond a doubt that [Plaintiffs] cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved."  *Brunt*, 284 F.3d at 718–19.

### II.    Argument

#### A. Plaintiffs' ERISA Claims Fail Because Plaintiffs Indisputably Were Not Eligible for Benefits under the Language of the Relevant Plans.

To establish a claim for being denied participation in an ERISA plan, Plaintiffs must show that they: (a) are common-law employees; *and* (b) meet the plans' eligibility requirements.  *Estate of Suskovich*, 553 F.3d at 571.  An individual who fails *either* prong lacks standing, because employers are not required to make ERISA plans available to all common-law employees.  *Id.*

5

This is because "[e]ligibility under ERISA is not automatic for common law employees…A plaintiff must also demonstrate that he was eligible under the terms of the employer's own benefit plans." *Id.* "'Nothing in ERISA…compels a plan to use the term 'employee' in the same way it is used in the statute.'" *Id.* (citing *Trombetta v. Cragin Fed. Bank Ownership Plan,* 102 F.3d 1435 (7th Cir.1996) (internal citation omitted)).

This flexibility arises out of two core principles underlying ERISA. First, plan sponsors are not required to establish benefit plans but, if they do, they generally have the discretion to set the plans' terms, including eligibility. *See Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996) ("Nothing in ERISA requires employers to establish employee benefits plans. Nor does ERISA mandate what kind of benefits employers must provide if they choose to have such a plan.") Second, a plan sponsor must set forth the plan terms in writing. "One of ERISA's purposes is to protect the financial integrity of pension and welfare plans by confining benefits to the terms of the plans as written, . . . [which] is why ERISA requires that every plan be established and administered under a written instrument." *Hammond v. Fidelity & Guar. Life Ins. Co.*, 965 F.2d 428, 429 (7th Cir. 1992) (quotation marks omitted). This "core functional requirement[]" of ERISA promotes certainty for plan sponsors and participants. *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995); *see also M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 435 (2015) (ERISA's focus on written plan terms is the "linchpin of a system that is not so complex that administrative costs, or litigation expenses, unduly discourage employers from offering [welfare benefits] plans in the first place") (alterations in original) (quotation marks and citation omitted).

Viewed within this framework, courts have soundly rejected claims like Plaintiffs' where the written plans clearly excluded the litigants from coverage, without reaching the question of

whether they were common-law employees.  For example, in *Estate of Suskovich*, the plaintiff claimed the individual in question was an "employee" entitled to benefits.  553 F.3d at 561.  The district court found that the individual was an independent contractor.  *Id.* at 563.  On appeal, the defendants argued that they could prevail, even if the court decided the "employee" status question in the plaintiff's favor, because their benefit plans stated that anyone not treated as an employee who is later ruled to be a common-law employee in a lawsuit "remains ineligible for benefits." *Id.* at 572.  The Seventh Circuit affirmed, noting that the alternative grounds would also provide a basis for affirming, "even assuming arguendo that [the plaintiff] was a common law employee." *Id.*

The Seventh Circuit's holding is fully aligned with decisions from other circuits.  In *Wolf v. Coca-Cola Co.*, the Eleventh Circuit held that a plaintiff was not entitled to ERISA benefits because she was excluded from eligibility by the plan's terms, even if she was a common-law employee. 200 F.3d 1337, 1342 (11th Cir. 2000).  Like the Seventh Circuit, *Wolf* held that "[t]he second prong—whether the plaintiff is eligible for benefits—is an examination of the terms of the company's ERISA plan.  The plaintiff must be eligible for benefits under the terms of the plan itself.  This requirement is necessary because companies are not required by ERISA to make their…plans available to all common law employees." *Id.* at 1340.  Thus, although the *Wolf* plaintiff had a "legitimate argument that she was a common law employee," "her claim for ERISA benefits fail[ed] the second prong because she [was] specifically excluded from eligibility by the terms of [the employer's] ERISA plan." *Id.* at 1342.

The Third, Fifth, and Tenth Circuits have also resolved like ERISA claims in a similar fashion, establishing a strong body of aligned precedent.  *See, e.g., Bauer v. Summit Bancorp*, 325 F.3d 155, 166 (3d Cir. 2003) (explaining that the employer had "no duty to create the Plan"

and "no duty to provide benefits to every employee"); *Bronk*, 140 F.3d at 1338 ("It is well established that ERISA does not prohibit an employer from distinguishing between groups or categories of employees, providing benefits for some but not for others…Accordingly, an employer need not include in its pension plans all employees who meet the test of common law employees."); *Abraham v. Exxon Corp.*, 85 F.3d 1126, 1130 (5th Cir. 1996) (rejecting plaintiff's argument that exclusion of leased employees from the plan was discriminatory); *Clark v. E.I. Dupont De Nemours & Co.*, 105 F.3d 646, at *2 (4th Cir. 1997) (even assuming that plaintiff was a common-law employee, plaintiff was not eligible to receive benefits under the language of the plan itself); *see also Ryan v. Flowers Foods, Inc.*, No. 1:17-CV-817, 2018 WL 3427878, at *3 (N.D. Ga. July 16, 2018), *appeal dismissed*, No. 18-13425, 2018 WL 6039896 (11th Cir. Oct. 11, 2018) ("Here, even if the Plaintiffs have a plausible argument that they are common law employees of the Defendants, their ERISA claim nonetheless fails because they have not shown that they are eligible for benefits under the terms of the Plan.").

This case law fully supports dismissal of Plaintiffs' ERISA claims.  State Farm in no way concedes Plaintiffs were common-law employees.  Instead, the facts would show Plaintiffs were independent contractors as stated in their Agreements.  But, as the cases above have held, this Court need not decide whether Plaintiffs are common-law employees, because the following plan terms in effect during 2016 and 2017 exclude Plaintiffs from coverage:

- The **Retirement Plan**:

    - Is only available to "an Employee who meets, or a former Employee who has met, the membership requirements in Section 2.1.1 hereof and who remains eligible for benefits hereunder."  (Dkt. 10-2 at 18; Dkt. 10-3 at 17; Dkt. 10-4 at 17; Dkt. 10-5 at 17.)

    - Excluded from the definition of "Employee" in all of these plans is "[a]ny person holding a State Farm Agent's Agreement[4] with any of the Companies or any

---

[4]        As discussed above, Sheldon and Hunsberger were both parties to Agreements that

employee of such person." (Dkt. 10-2 at 16–17; Dkt. 10-3 at 15–16; Dkt. 10-4 at 15–16; Dkt. 10-5 at 15–16.)

- o The Retirement Plan in effect during 2016 and 2017 further specifies that these individuals are excluded "regardless of whether a court or administrative agency determines at any time that any such individual is a common law employee of the Companies." (Dkt. 10-3 at 15–16; Dkt. 10-4 at 15–16; Dkt. 10-5 at 15–16.)

- The **401(k) Plan**:

  - o Is only available to eligible Employees. (Dkt. 10-6 at 13; Dkt. 10-7 at 13–14; Dkt. 10-8 at 13–14; Dkt. 10-9 at 13–14; Dkt. 10-10 at 13–14.)

  - o Excluded from the definition of "Employee" in all of these plans is "[a]ny Agent or employee of an Agent," with "Agent" defined as "any individual or corporation holding a State Farm Agent's Agreement with any of the State Farm Insurance Companies." (Dkt. 10-6 at 7, 9; Dkt. 10-7 at 7, 9; Dkt. 10-8 at 7, 9; Dkt. 10-9 at 7, 9; Dkt. 10-10 at 7, 9.)

  - o The 401(k) Plan in effect during 2016 and 2017 further specifies that these individuals are excluded "regardless of whether a court or administrative agency determines at any time that any such individual is a common law employee of the Companies." (Dkt. 10-7 at 9–10; Dkt. 10-8 at 9–10; Dkt. 10-9 at 9–10; Dkt. 10-10 at 9–10.)

- The **Medical Plan:**

  - o Is only available to eligible Employees. (Dkt. 10-15 at 3–5; Dkt. 10-16 at 3–5; Dkt. 10-18 at 6.)

  - o Excluded from the definition of "Employee" in all of these plans are agents. (Dkt. 10-17 at 23; Dkt. 10-18 at 6; Dkt. 10-19 at 6.)

  - o The 2016 PPO Plan and 2017 HMO SPD further specify that "[a]ny State Farm independent contractor agent or employee of a State Farm independent contractor agent" is not eligible for coverage, "regardless of whether a court or administrative agency determines at any time that any such individual is a common law employee." (Dkt. 10-17 at 23; Dkt. 10-19 at 6.)

- The **Dental Plan:**

  - o Is only available to eligible Employees. (Dkt. 10-20 at 15.)

  - o Excluded from the definition of "Employee" is "[a]ny State Farm independent contractor agent or employee of a State Farm independent contractor agent,"

_____

referred to them as "Agent[s]." (Dkt. 10-11; Dkt. 10-13.)

9

"regardless of whether a court or administrative agency determines at any time that any such individual is a common law employee." (Dkt. 10-20 at 11.)

- The **Long-Term Disability Plan** from 2017:

    o  Is only available to eligible Employees. (Dkt. 10-27 at 14.)

    o  Excluded from the definition of "Employee" is "[a]ny Agent or employee of an Agent," "regardless of whether a court or administrative agency determines at any time that any such individual is a common law employee." (Dkt. 10-27 at 92.)

The exclusions in each of these plans support judgment on the pleadings for State Farm.[5] Each of these plans excludes from coverage agents, independent contractors, and parties to an Agent's Agreement. And the plans further provide that such exclusions apply notwithstanding any determination that any individual was a common-law employee. Judgment on the pleadings for State Farm is therefore appropriate. *See, e.g., Estate of Suskovich*, 553 F.3d at 572; *Wolf*, 200 F.3d at 1342; *Abraham*, 85 F.3d at 1131.

Notably, Plaintiffs' complaint confirms they worked for State Farm as independent contractor agents under a State Farm Agent's Agreement. (Dkt. 1 ¶¶ 54, 67.) And those Agreements were for a specified time, could not be extended, and did not obligate State Farm to offer any further agreement. (*See* Dkt. 10-11 at 4–5; Dkt. 10-13 at 4.) There is also no dispute that Sheldon's Agreement was terminated effective 11:59 p.m. on September 30, 2017, while Hunsberger's Agreement expired on December 31, 2016. (Dkt. 10-12; Dkt. 10-14.) Thus, Plaintiffs were clearly ineligible for benefits under the relevant plans' terms. And such

---

[5]  The Life Insurance Plan in effect during 2016-2017, and the Long-Term Disability Plan in effect during 2016, did not contain this exclusion language. *See, e.g.,* Dkt. 10-25; Dkt. 10-26. *But see* Dkt. 10-27 (LTD plan in effect for 2017 ***does*** include the same exclusionary language discussed above). As discussed *infra*, however, Plaintiffs lack standing to pursue claims under these plans because they were parties to term-limited Agreements that undisputedly ended in 2016 and 2017, and Plaintiffs did not experience any condition before their Agreements ended that would have given rise to an entitlement under either benefit plan.

exclusions are clearly permissible because of the flexibility given a plan sponsor to set a plan's written terms. *Schoonejongen*, 514 U.S. at 83; *Tackett*, 574 U.S. at 435; *Lockheed Corp.*, 517 U.S. at 887. Given these policy considerations, and because there is no dispute as to whether Plaintiffs were eligible for benefits under the terms of the applicable plans discussed above, State Farm's motion for judgment on the pleadings should be granted.

### B. Even if State Farm Violated ERISA's Minimum Participation Standards, Plaintiffs Cannot Seek Relief for Any Such Alleged Failures.

Plaintiffs also allege that, because they were allegedly improperly excluded from coverage under the various plans their complaint cites, State Farm violated ERISA's minimum coverage requirements. (Dkt. 1 ¶¶ 115–20, 125–27) (citing 26 U.S.C. §§ 410(b) and 105(h)). Plaintiffs further claim that remedying this alleged failure will result in Plaintiffs being provided restitution or credit for all ERISA benefits to which they are retroactively entitled. (Dkt. 1 at 38–39.)

Plaintiffs' theory, however, fails as a matter of law for at least three reasons. *First*, the statutory provisions that Plaintiffs cite do not apply to life insurance or long-term disability plans.[6] They only apply to retirement plans, *see* 26 U.S.C. § 410(b), and certain medical reimbursement plans, *see* 26 U.S.C. § 105(h). *Second*, any failure to satisfy any minimum coverage requirements regarding medical plans would not entitle Plaintiffs to any relief. Rather, remedying such an alleged failure simply results in the taxation of excess benefits to highly compensated individuals. 26 U.S.C. § 105(h)(1); 26 C.F.R. § 1.105-11(e)(1). *Third*, while

---

[6]     Life insurance plans and certain long-term disability plans (those that are part of a cafeteria plan) are subject to different non-discrimination requirements. *See, e.g.,* 26 U.S.C. §§ 79(d), 125(b). However, any alleged failure to comply with those requirements would have provided Plaintiffs no basis for relief. Rather, it would only have had tax implications for highly compensated individuals covered by these plans. 26 U.S.C. §§ 79(d), 125(b); Temp. Treas. Reg. 26 C.F.R. §1.79-4T, Q/A-6; Prop. Treas. Reg. 26 C.F.R. 1.125-7(m)(2). Plaintiffs can cite no legal principle that would require any retroactive addition of individuals to the long-term disability or life insurance plans.

ERISA does contemplate retroactive plan amendments for retirement plans that fail the minimum coverage standards, 26 C.F.R. § 1.401(a)(4)-11(g), there is no requirement that any such retroactive action include providing retroactive coverage to Plaintiffs. 26 C.F.R. § 1.401(a)(4)-11(g)(2).

Thus, any alleged failure to satisfy ERISA's minimum coverage standards provides Plaintiffs no basis for relief. Therefore, Plaintiffs' minimum coverage standard argument fails as a matter of law. *See, e.g.*, *Pope v. United States*, No. 16-1059-SLD, 2017 WL 6523141, at *2 (C.D. Ill. Aug. 28, 2017) (granting defendants' motion for judgment on the pleadings as to discrimination claim where Title VII did not apply); *Milligan by Thomas v. Rock on the River, Inc.*, No. 16-CV-498-JDP, 2017 WL 6734190, at *6 (W.D. Wis. Dec. 29, 2017), *aff'd*, 738 F. App'x 373 (7th Cir. 2018) (finding that plaintiff's claim under state statute failed as a matter of law because statute did not apply).

This conclusion also dooms Plaintiffs' fiduciary duty claim, which is premised on State Farm's alleged failure to satisfy ERISA's minimum coverage requirements. (*See* Dkt. 1 ¶ 127.) Assuming *arguendo* that State Farm's classification decision could even be considered a fiduciary act,[7] since Plaintiffs cannot demonstrate any failure to satisfy the requirements discussed above, there can be no breach of fiduciary duty. *See, e.g.*, *Herman v. Cent. States, Se. & Sw. Areas Pension Fund*, 423 F.3d 684, 695 (7th Cir. 2005) (no breach of fiduciary duty occurred where plan amendments did not violate ERISA's anti-cutback or notice rules and individual benefit determinations were not arbitrary and capricious); *Green v. ExxonMobil Corp.*, 413 F. Supp. 2d 103, 119 (D.R.I. 2006), *aff'd*, 470 F.3d 415 (1st Cir. 2006) (because plaintiffs were not entitled to

---

[7]     *See McGath v. Auto-Body N. Shore, Inc.*, 7 F.3d 665, 670–71 (7th Cir. 1993) ("[A]n employer does not act as a fiduciary when it . . . sets the terms of a plan."); *see also Johnson v. Georgia-Pacific Corp.*, 19 F.3d 1184, 1188 (7th Cir. 1994).

benefits coverage, defendants did not breach fiduciary duty by failing to pay benefits).

###### C. Plaintiffs Also Lack Standing For Claims Under the 2016-2017 Life Insurance Plans and the 2016 Long-Term Disability Plan Because Plaintiffs Can Identify No Concrete Injury from Their Inability to Participate in Those Plans.

Even though the 2016-2017 Life Insurance Plan and the 2016 Long-Term Disability Plan do not include the same exclusion language discussed above, Plaintiffs lack standing to pursue claims under these plans. This is because Plaintiffs' Agreements undisputedly ended in 2016 and 2017.[8] (Dkt. 10-11 at 2; Dkt. 10-12; Dkt. 10-13 at 2; Dkt. 10-14.)

Plaintiffs do not allege they became eligible for life insurance or long-term disability benefits during their Agreements. (*See generally* Dkt. 1.) Nor can Plaintiffs allege they have some future entitlement to such benefits given the term-limited nature of their Agreements. Thus, Plaintiffs lack standing to pursue claims under these plans.

A plaintiff bears the burden of establishing three elements to have standing. *Spokeo, Inc. v. Robins*, --- U.S. ---, 136 S. Ct. 1540, 1547 (2016). A plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by favorable judicial decision." *Id.* (citations omitted). Regarding the first element, "a plaintiff must show that he suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548.

Plaintiffs cannot meet this burden for the 2016-2017 Life Insurance Plan or the 2016 Long-Term Disability Plan. Neither Plaintiff alleges any event occurred during the term of his Agreement that would have given rise to a right to either life insurance or long-term disability

---

[8]     The Long Term-Disability Plan in effect during 2017 did contain the same exclusion language discussed above. Therefore, Sheldon's claim under that Plan (because he was a TICA during 2017) fails for the reasons outlined *supra*.

benefits.  And, because their Agreements were term-limited, Plaintiffs cannot plausibly allege a dispute over some future right to benefits.  *See, e.g., Leo v. Laidlaw, Inc.*, 38 F. Supp. 2d 675, 678 (N.D. Ill. 1999) (plaintiff lacked standing to pursue ERISA claim where he did not allege he was denied any benefits or reimbursement of expenses).

For example, in *Vizcaino v. Microsoft Corp.*, No. C93-178, 1993 WL 1622929 (W.D. Wash. July 21, 1993), like the Plaintiffs here, the plaintiffs alleged the defendant had improperly misclassified them as independent contractors, thereby denying them benefits in violation of ERISA.  *Id*. at *1.  The court found that the plaintiffs lacked standing to pursue claims under the long-term disability plan.  *Id*. at *4–5.  Specifically, there were no ERISA remedies available because the claims were "based only upon past exclusions from coverage," and the plaintiffs "never became disabled such that benefits would have been due" under the long-term disability plan. *Id*. at *5.

Plaintiffs here have similarly suffered no concrete injury under the Life Insurance and Long-Term Disability Plans because they never died or became disabled before their Agreements were terminated, and they can claim no future entitlement.  Therefore, they lack standing.  *Id.*

This conclusion is reinforced by *Thole v. U.S. Bank N.A.*, --- U.S. ---, 140 S. Ct. 1615 (2020).  In that ERISA case, the Supreme Court rejected the plaintiffs' arguments that standing existed because ERISA provided a right to sue for restoration of plan losses and other equitable relief.  This is because in *Spokeo* the Supreme Court had rejected "the argument that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Thole*, 140 S. Ct. at 1620 (citing *Spokeo*, 136 S. Ct. at 1549) (other citations omitted).

This same reasoning defeats Plaintiffs' claims under the Life Insurance Plans and the

Long-Term Disability Plan.  The Plaintiffs here seek relief for past exclusions (Dkt. 1 at 38–39), but do not allege that they became entitled to long-term disability benefits or life insurance benefits during the term of their Agreements.  Nor can Plaintiffs plausibly allege facts regarding future benefit claims given the term-limited nature of their Agreements.[9]  Because Plaintiffs have suffered no concrete injury, they lack standing.  *See also Bryant v. Wal-Mart Stores, Inc.*, No. 16-24818-CIV, 2020 WL 4333452, *14–15, 17 (S.D. Fla. July 15, 2020) (plaintiffs lacked standing to pursue alleged ERISA violation based on alleged defective COBRA notice where they could not demonstrate that deficiency "proximately caused them any concrete injuries.").

Under all the arguments set forth above, Plaintiffs' ERISA claims fail as a matter of law.

## CONCLUSION

Defendants respectfully request that this Court enter an Order granting their motion.

<div style="margin-left:40%">

Respectfully submitted,

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY; STATE FARM
LIFE AND ACCIDENT ASSURANCE
COMPANY; STATE FARM FIRE AND
CASUALTY COMPANY; STATE FARM
GENERAL INSURANCE COMPANY


By:    */s/ Joseph J. Torres*_____
        One of Its Attorneys

</div>

Joseph J. Torres (Lead Counsel)
Jenner & Block LLP
353 North Clark Street
Chicago, IL 60654
(312) 222-9350
jtorres@jenner.com

---

[9]      The *Vizcaino* court allowed the plaintiffs' life insurance claim to proceed because they alleged they were also denied the right to convert coverage had they been enrolled in that plan. 1993 WL 1622929, at *4.  But Plaintiffs here make no such allegations.  In addition, this holding must be viewed in light of the Supreme Court's subsequent ruling that a plaintiff must identify a "concrete and particularized" interest to establish standing.  *Spokeo*, 136 S. Ct. at 1548.

## CERTIFICATE OF SERVICE

The undersigned certifies that on May 24, 2021, he has caused a copy of the foregoing to be electronically filed, via ECF, on the following:

Robert M. Foote
Elizabeth C. Chavez
Foote Mielke Chavez
& O'Neil, LLC
10 West State Street
Suite 200
Geneva, IL 60134

D.G. Pantazis, Jr.
Wiggins, Childs, Pantazis,
Fisher & Goldfarb, LLC
301 19th Street North
Birmingham, AL 35203


*/s/ Joseph J. Torres*
Joseph J. Torres

16